■ SHAHEN CHEKIJIAN et al., Appellants, v JEFFREY P. MANS et al., Respondents. [825 NYS2d 281]—

Cardona, P.J. Appeals (1) from an order of the Supreme Court (Dawson, J.), entered September 6, 2005 in Essex County, upon a decision of the court in favor of defendants, and (2) from the judgment entered thereon.

Plaintiffs and defendants own adjoining lots of land in the Town of Schroon, Essex County, which are part of the 30-lot Edgewater Subdivision situated along the shore of Schroon Lake. It is undisputed that when the lots were subdivided by the common grantors in the 1960s, a paved macadam right-of-way (hereinafter ROW) leading from lot 6, which adjoins State Route 9, traveled through lot 7 to lot 8, and provided the only access to the highway for lots 7 and 8. Plaintiffs herein purchased lot 8 in 1977, at which time it was improved by a single family residence. Their deed noted, among other things, that the conveyance included "a right of way leading over an existing road from Route 9 in a southeasterly direction to the parcel herein conveyed for all purposes." In 2002, defendants purchased lot 7, which was undeveloped. Their deed made specific reference to a clause in their predecessor-in-title's deed, which stated that lot 7 was burdened by "a right of way for all purposes over the existing macadam road leading from Route 9 in a southeasterly direction . . . . Said macadam road commences approximately 25' northerly of the parcel herein conveyed on the easterly bounds of Route 9 right of way."

Following their purchase, defendants began clearing and excavating lot 7 in order to build a home, disturbing the macadam surface of the ROW. While this construction work was ongoing, plaintiffs commenced this action in the summer of 2002, seeking, among other things, a judgment directing defendants to restore the ROW to its original location and condition. A temporary restraining order obtained by plaintiffs was vacated and defendants proceeded with the construction, ultimately relocating part of the ROW several feet from its original location. While it appears that the relocation overlapped the original driveway to some extent and resulted in the ROW being wider in some places, it is undisputed that, in moving the ROW to the west of its original site, a curve was created where

the ROW had formerly been relatively straight. A nonjury trial was held, after which Supreme Court dismissed the complaint, prompting this appeal.

Initially, we are unpersuaded by plaintiffs' contention that the record unequivocally established that the location of the ROW was fixed and, therefore, defendants were barred from relocating it for any reason. As set forth by the Court of Appeals, under certain circumstances and "in the absence of a demonstrated intent to provide otherwise, a landowner burdened by an express easement of ingress and egress may [change it]" (*Lewis v Young*, 92 NY2d 443, 449 [1998]). Notably, the first step is to examine the words used in creating the interest (*see id.* at 453). In *Lewis v Young* (*supra*), the Court concluded that a deed conveyed to the easement holder containing the right to "the perpetual use, in common with others, of [the burdened landowner's] main driveway, running in a generally southwesterly direction" (*id.* at 446 [emphasis omitted]) did not establish a fixed location, such as would be shown by, for example, a specific metes and bounds description (*see generally Green v Blum*, 13 AD3d 1037, 1038 [2004]). Instead, the Court held that the "provision manifests an intention to grant a right of passage over the driveway—wherever located—so long as it meets the general directional sweep of the existing driveway" (*Lewis v Young, supra* at 453).

Here, the ROW language similarly describes a general direction for an undefined easement and does not set forth a specific description. Furthermore, while there is no question that the 1967 deeds from the common grantors conveying the two lots to the parties' predecessors in interest refer to the ROW as an "existing road" and an "existing macadam road," we note that this Court, in *Green v Blum* (*supra* at 1038), held that the grant of an easement through an " 'existing roadway' " could be relocated. Accordingly, we are unpersuaded that the similar language herein demonstrates an intent that the location be fixed. Moreover, while plaintiffs also refer to a subdivision map and the presence of certain monuments on the property, i.e., iron pipes, as support for their arguments, we agree with Supreme Court that this evidence has certain ambiguities which do not conclusively demonstrate a fixed location for the ROW.

Even though plaintiffs did not demonstrate that the location of the easement was intended to be fixed, such factor does not end our inquiry. As noted in *Lewis v Young* (*supra*), relocation is not appropriate for even an undefined easement when it frustrates the purpose of the easement's creation, increases the easement holder's burden or "significantly lessen[s] the utility

of the right of way" (*id.* at 452). While we discern no legitimate dispute that the essential purpose of the easement's creation was to provide a means of ingress and egress to the highway for the owners of lots 7 and 8, plaintiffs maintain that the relocated ROW has increased their burden and significantly lessened its usability for their purposes.

In that regard, plaintiffs maintain that the ROW was improperly moved because the curve that was created significantly affects their ability to back their 21-foot boat and 24-foot trailer from Route 9 over defendants' property and into their garage on lot 8. Plaintiff Shahen Chekijian testified that, prior to the spring of 2002, transporting his boat over the ROW took three to five minutes, however, after the relocation it took him over half an hour. Chekijian also indicated that the task was made more difficult by the fact that the ROW was currently unpaved, which made braking difficult, and his maneuverability was impaired by the presence of vehicles parked on or near the ROW. Plaintiffs' expert, although conceding that maneuvering the boat over the ROW had always been difficult, essentially testified that after the relocation it was even more burdensome. In contrast to this proof, defendants' expert testified that the ability to maneuver a trailored boat was the same following the relocation. Defendant Jeffrey P. Mans testified that the ROW was originally relocated due to safety concerns expressed by plaintiffs. Additionally, he indicated that the vehicles blocking the ROW during a family party was an isolated incident and, further, he intended to repave the ROW with blacktop after a final determination as to its location was made, a representation that was confirmed during oral argument.

In dismissing the complaint, Supreme Court concluded that the relocated ROW provides plaintiffs with the same utility as the original driveway. In doing so, the court decided the credibility issues in defendants' favor, finding that plaintiffs' evidence with respect to their claim of increased burden and inconvenience was not "reflective of the real state of affairs." Significantly, " '[o]n our review of a verdict after a bench trial, we independently review the weight of the evidence and may grant the judgment warranted by the record, while according due deference to the trial judge's factual findings particularly where . . . they rest largely upon credibility assessments' " (*Salvador v Uncle Sam Auctions & Realty, Inc.*, 30 AD3d 861, 861 [2006], quoting *Martin v Fitzpatrick*, 19 AD3d 954, 957 [2005]). Here, taking into account " 'all the surrounding circumstances' " (*Marek v Woodcock*, 277 AD2d 864, 865-866 [2000], *lv dismissed* 96 NY2d 792 [2001], quoting *Wilson v*

*Palmer*, 163 Misc 2d 936, 938-939 [1995], *affd* 229 AD2d 647 [1996]), our review discloses no basis to disturb Supreme Court's determination (*see Amodeo v Town of Marlborough*, 307 AD2d 507, 508-509 [2003]).

We have reviewed plaintiffs' remaining arguments, including their claim that defendants failed to demonstrate how the relocation of the ROW was "consonant with the beneficial use and development of [the] property" (*Lewis v Young, supra* at 452), and find them to be unpersuasive.

Mercure, Crew III, Peters and Spain, JJ., concur. Ordered that the order and judgment are affirmed, with costs.